JOHN YOUNG *vs.* FREDERICK MERTENS.

*Instructions—Practice—The rights of a Vendor—Consignor —Measure of Damages—Parol Evidence of a Written Instrument.*

Where prayers granted on the same hypotheses of facts, are so inconsistent, that conformity with one necessarily implies disregard of the other, they are calculated to mislead, and therefore erroneous; but instructions founded upon different hypotheses are not liable to that objection.

Young *vs.* Mertens.

Moreover, it must appear not only that the instruction was erroneous, but that the appellant was prejudiced thereby.

Under the Act of 1862, ch. 154, objection cannot be raised in the Court of Appeals, to a prayer, for having assumed a fact, unless such objection appears to have been raised and decided below.

Where the vendee refuses to accept articles sold to him, the vendor may consider them as his own, if there has been no actual delivery, or he may consider them as the vendee's, and sell them.

A consignor may support an action of trover or trespass at common law.

A plaintiff in an action of trespass, for taking away goods, may give in evidence, for the purpose of enhancing the damages, the circumstances which accompanied and gave character to the wrong, and the jury may rightfully consider these circumstances for the purpose of increasing the damages.

The contents of a written instrument cannot be proved by parol evidence without showing its loss, or accounting for its absence, or by laying a foundation for the introduction of secondary evidence.

APPEAL from the Circuit Court for Allegany County.

*1st Exception:* The plaintiff, after proving the mode in which the business of shipping coal was done at the mines in Allegany County, at Cumberland, and on the Chesapeake and Ohio Canal, offered to prove by Edward Wilson that he had been for six or seven years boating on the canal, and had frequently seen the coal weighed out of canal boats, and had thus become acquainted with the number of tons of coal in a boat. A man in that business can tell how much coal he has on board. The "Boyer and Watson" was a larger boat than usual—it was loaded down five feet in the bow, and about four and a half feet in the stern ; when boats before us with a hundred and fifteen tons passed, we sometimes touched the bottom. I would say that when Young took the coal, there were over a hundred and sixteen tons of coal in the boat. At the time Young was taking the coal he asked witness how many tons we had; I told him we had a hundred and sixteen tons. He never afterwards said any thing to me, or complained that there was not a hundred

and sixteen tons of coal in the boat.  To the admissibility of this testimony of Wilson, the defendant objected, but the Court (SMITH, J.) overruled the objection, and permitted the evidence to be given to the jury ; to which ruling of the Court the defendant excepted.

2d *Exception :* The plaintiff then rested his case, and the defendant offered in evidence the commission filed in the cause; in which, among other things, the witness Joseph E. Potts, in reply to the interrogatory, "If he knew whether the defendant sold the coal to the Government of the United States, or to any of its agents, and whether the plaintiff did not claim the price of said coal from the said Government, and stop the defendant from receiving pay for the same?" stated that " he knew from notices filed in the office of Capt. Hartze, and which came to his hands as chief clerk, that a cargo of coal taken from a boat called the 'Boyer and Watson,' said, from the manifest, to be a hundred and sixteen tons—Cumberland coal—was sold to the Government by John Young.  The plaintiff did stop the payment to the defendant by a notice filed in the office, signed by himself and his attorney, T. W. Jones, dated January 12, 1863.  The defendant having previously stopped the payment of the same to the plaintiff, by a similar notice dated the 10th of the same month, signed by R. and P. Jackson, attorneys for John Young; and from that time, neither of the parties has been paid, to his knowledge."

The plaintiff objected to this testimony.  The defendant, at the time of offering said evidence, stated that he would prove, in connection therewith, that the plaintiff, about the time of the said controversy in Georgetown, about said coal, stated that he had stopped the money therefor in the hands of the United States Government, and that Young had sold said coal to the Government.

The Court sustained the objection and refused to permit the evidence of Potts to be given to the jury ; but the

Court consented to admit the evidence of the plaintiff, when the same should be offered; to this ruling the defendant excepted.

*3d Exception:* Upon all the evidence in the cause the plaintiffs offered the following prayers:

1st. That if the jury shall believe from the evidence in the cause that the plaintiff had agreed to sell to Heiston & Co., of Georgetown, the cargo of coal on board the boat "Boyer and Watson," and had directed the men engaged in transporting it to that point, to deliver it to said Heiston & Co., and that they offered to deliver it, and that the said Heiston & Co. refused to receive it, and would not accept the same, that after such refusal the plaintiff, at his election, had the right to rescind the said contract of sale, and that upon such election the title to the same vested in him.

2d. That if the jury shall believe from the evidence in the cause that the defendant wrongfully took the cargo of coal on the canal boat "Boyer and Watson," without the consent of the owner, and that the same belonged to the plaintiff, that in such case the jury is not confined in this action in fixing the damages, to the mere amount of the value of the coal when so taken by the plaintiff.

3d. That even though the jury should believe from the evidence in the cause that the cargo of coal in the "Boyer and Watson" was sold by the plaintiff to Heiston & Co., of Georgetown, to be delivered to them as a part of several boat loads of coal contracted by the plaintiff to be sold and delivered to them, and part of which entire contract had been previously delivered, and if they shall further believe that the parties in charge of said cargo offered to deliver the said coal to the said Heiston & Co., and that they refused to receive the same, that after such refusal the plaintiff, at his election, had the right to rescind the said contract of sale, and that upon such election the title to the same vested in him, or if they shall believe that at the

time of such tender of delivery to them, the said Heiston & Co. would not receive the said coal, but told the parties in charge to sell the same or do the best they could with it, and that such direction was not given on their own account, but on account of the plaintiff, that the title to such coal was in the plaintiff upon his election to rescind such contract, and the said Heiston & Co. could not empower a sale of the same, unless the jury shall find that they had authority from the plaintiff to sell the same. These prayers the Court granted, and the defendant excepted thereto; and the verdict and judgment being in favor of the plaintiff, the defendant appealed.

The cause was argued before BOWIE, C. J., BARTOL and WEISEL, J.

*J. H. Gordon* for the appellant:

The first exception is to the admissibility of the testimony of Edward Wilson, which was offered to show the quantity of coal on board the boat. The testimony of Dr. McKaig, shows that the coal had been weighed, and a weigh bill, stating the exact quantity of coal on board the boat, was given to the appellee, or to his master of the boat, and that the exact weight could have been proved, and therefore the testimony of Wilson was not the best testimony that the plaintiff could have produced for the purpose of proving the quantity, and it should not have been admitted.

The second exception is to the rejection of the testimony of Potts, to prove that the appellant had sold the coal to the United States, and that the appellee had prevented him from getting the pay for it, and was claiming the money from the Government; and also the value of the same coal in this action. This ruling was erroneous.

The Court also erred in granting the several prayers of the plaintiff, which constituted the third exception.

The first and third prayers should not have been granted, because they go upon the theory that the appellee had rescinded the contract with Heiston & Co., and that the title to the coal had revested in him by the rescision, when there was no evidence of any weight which could amount to a rescision. The question on these two prayers is, was the title to the coal in the appellee, or in Heiston & Co., at the time the appellant took it? *Gordon vs. Harker,* 7 *Term R.,* 9. The delivery of part of the property intended to be delivered vests the title to all, when set apart, in the vendee. *Rhode & al. vs. Thwaites,* 6 *B. & C.,* 388. It is an entire contract. *Mead vs. Degoeyer,* 16 *Wend.,* 632; *Paige vs. Ott,* 5 *Denio,* 406.

The shipment alone with orders to deliver it to Heiston & Co., under the previous contract of sale, vested the title in the vendee, and was a complete delivery. *Powell et. al. vs. Bradlee & Co.,* 9 *Gill & John.,* 276; *Hall & Loney vs. Richardson,* 16 *Md. Rep.,* 396; *Fragano vs. Long,* 4 *Barn. & Cress.,* 219; *Alexander vs. Gardner,* 1 *Bing. N. C.,* 671; *Blakey vs. Dinsdale et al., Cowper,* 661; *Parsons' Mercantile Law,* 210, *note* 3.

If the coal were to be delivered to Heiston & Co. in Georgetown, the *tender* of delivery made by the captain pursuant to the appellee's directions, passed the property in the coal to Heiston & Co.; the appellee had done all he could do and thereby completely performed the contract, and the property in the coal vested in Heiston & Co. *Bement vs. Smith,* 15 *Wendell,* 493; *Downer vs. Thompson,* 2 *Hill,* 137.

The refusal of Heiston & Co. to receive the coal, and direction to the captain to sell it, did not change the property in the coal and revest the title in the appellee, even at his election, (if such a thing had taken place.) The refusal to accept gave the vendor authority to sell the property for the vendee, if the property were perishable, and charge the vendor with the deficit or amount to him for

the excess over the original price. *Sands & Crump vs. Taylor & Lovett*, 5 *Johns. R.*, 395 ; *Maclean vs. Dunn*, 4 *Bing.*, 722 ; 1 *Parsons on Con.*, 446, (3 *Edit.*)

If the sale by the vendor rescinded the contract he could not sue for the deficit; a rescinded contract is utterly abrogated; yet the law gives that remedy to the vendor by the vendee refusing to accept.  2 *Parsons on Con.*, 483, 484 ; *Boorman vs. Nash*, 9 *Barn. & Cress.*, 145 ; *Maclean vs. Dunn*, 4 *Bing.*, 722.

For the same reason the stoppage in transitu does not rescind the sale.   If it did, the seller could not sue for the price, which he may do, and he must account for the surplus if there be any.  1 *Parsons on Con.*, 479, 480 ; *Newhall vs. Vargas*, 15 *Maine*, 314.

The first and third prayers of the appellee assume the sale and delivery as contended for by the appellant, to Heiston & Co., but assert the proposition, that on the refusal of Heiston & Co. to receive it, the appellee had a right to elect to rescind the contract, and that upon such election, the title revested in him.   But that is not law. The previous authorities and the mode of passing title to personal property, contradict it.   On the refusal to accept, the title is not changed, and the same facts would then be required to pass title and change the property back to the appellee, as to make an original sale.   There must be some act to make a rescission.  *Quincy et al. vs. Tilton*, 5 *Greenleaf*, 277 ; 1 *Phil. on Ev.* 611, (16 *sec. of note.*)

But if it were law that the appellee had the right to elect to rescind and revest the property in himself, both of these prayers are erroneous, because they do not submit to the finding of the jury the essential fact, *whether the appellee did elect or not.* · The mere right to elect without the exercise of the right, could not revest the title to the property.   The prayers must submit all the propositions of fact from which the legal conclusion is to be drawn. Here, according to the theory of the plaintiff, one of the

essential facts is omitted, viz: the act of election; and without that, the legal conclusion cannot be deduced. Besides, there is no proof in the cause from which the fact of an election could have been found by the jury before the appellant took the coal, and an election afterwards would not do, for if the coal belonged to Heiston & Co. when the appellant took it, any injury done by the taking was to them and not to the appellee; the appellee could not sue for the conversion, nor for trespass done by the taking, unless he was the owner at the time of the taking. The appellee could only sell the coal by an implied authority as their agent, or as a trustee by implication of law, and was bound to account to them for the proceeds. The appellee has no equity against the appellant, he stopped the money in the hands of the Government, prevents its recovery, and still claims the full value and double damages from the appellant in this action.

The last or alternative proposition of the 3d prayer— "*that Heiston & Co. gave directions, as the agent of the appellee, to sell the coal on the appellee's account,*"—has no evidence to support it. Their directions to the boatmen to sell, was in accordance with their power and ownership. The coal was theirs by sale and delivery, and they could do with it as they pleased. They did accordingly direct the boatmen to sell it, or do what they pleased with it, and the presumption is, that the authority given was on their own account.

There was testimony which would have justified the jury in finding that the appellant bought from Wilson & Crawfis, or one of them, by authority from Heiston & Co., and therefore the latter proposition of the third prayer of the appellee was erroneous. *Boyle vs. McLaughlin,* 4 *H. & J.*, 291; 1 *Parsons on Contracts,* 674, *note K;* 2 *Parsons on Contracts,* 484, *note I.*

The second prayer is erroneous; it applies to the whole declaration, and part of the counts, if not all, are in

trover, and in that action the measure of damages is the value of the coal at the time of taking. .

The second prayer was put to enable the plaintiff to recover double damages under the Act of 1862, ch. 114, sec. 2, and it was given with that view, but the Act does not apply, as the taking was not in the State. The proof shows that the appellant took the coal by the consent of the captain, and was not a trespasser. But supposing the counts to be part in trespass and part in trover, it was for the jury to say which counts they would find upon, and the prayer being applicable to all, was erroneous, because it is not the correct rule of damages in trover.

*Thomas J. McKaig* and *Thomas J. McKaig, Jr.*, for the appellee :

The testimony, to the reception of which the appellant's first exception was taken, was properly received, nor was there any conflicting testimony in the case. The objection was based upon the idea that the way bill and manifest were the best evidence of the number of tons in the boat; but the way bill and manifest would have been no evidence against the appellant, because he was not a party to either of them. *Richardson vs. Milburn*, 17 *Md. Rep.*, 68.

The second bill of exceptions was taken to the ruling of the Court excluding the testimony of Joseph Potts, in relation to notices filed in the office of Capt. Hartze, which were not produced, nor was notice given, to produce them. The notices ought to have been produced, as they were the best evidence, and no parol evidence could be given in relation to the contents of those notices.

The exceptions to the appellee's three prayers involve two questions :—The first and the third direct the jury that although the appellee had sold the coal to Heiston & Co., if they refused to receive the coal, and did not receive it, the appellee had a right to rescind the contract

so far as Heiston & Co. and the appellant were concerned, and treat the coal as his own, and that after he had treated the coal as his own, the appellant could not set up the contract between the appellee and Heiston & Co., to prevent the appellee from recovering, as he had agreed with the boatman " to stand the brunt with the appellee." *Dubois vs. The Delaware and Hudson Canal Company,* 4 *Wend.,* 285; *Story on Sales,* sec. 424.

The second prayer of the appellee asserts the principle that the jury was not confined in the measure of damages to the actual value of the coal. This prayer was right. *Act of* 1862, *ch.* 114; *Gardner vs. Lewis,* 7 *Gill,* 391. There was no evidence that the law in the District of Columbia was different from the law of Maryland; therefore, independent of the rule of the common law, the plaintiff was entitled to recover double the value of the coal. *Harper vs. Hampton,* 1 *H. & J.,* 710; *Davis vs. Jacquin, &c.,* 5 *H. & J.,* 108; *Haney vs. Marshall,* 9 *Md. Rep.,* 211. In cases of personal tort out of the limits of the State the remedy may be enforced in the State. 16 *Md. Rep.,* 350.

Bowie, C. J., delivered the opinion of this Court.

The exceptions brought up by the appellant in this case are threefold; the first and second apply to the rulings of the Court below on the evidence; the third, to the prayers granted by the Court at the instance of the appellee. As the last is the most important, they will be examined in inverse order. For a full comprehension of the points raised by the appellant, it is necessary to take a cursory view of the pleadings.

The appellee's amended *nar.* (the suit being instituted on the 5th of February, 1863,) contains five counts. The first two framed obviously, though not expressly, on the second section of Art. 30 of the Code of Public General Laws, entitled Crimes and Punishments, as amended by

the Act of 1862, ch. 114. The last three, sounding in trespass, substantially complying with the forms of the Code in Art. 75.

The first count averred that the plaintiff (the appellee) being in possession of and owner of a canal boat, loaded the same with one hundred and sixteen tons of coal, at Cumberland, and consigned and directed the same to be delivered to Heiston & Co., of Georgetown, D. C., to be conveyed upon said boat, upon the Chesapeake and Ohio Canal, to the consignees at Georgetown, and the defendant fraudulently received the coal without the consent of the owner, knowing the same to be so consigned, of the persons engaged in transporting the coal on the canal and converted the same to his own use.

The second count, reciting in part as in the first, further averred, that the defendant purchased the said coal without the consent of the owner, knowing the same to be so consigned, from the persons engaged in transporting the same and converted it to his own use.

The third, fourth and fifth counts, severally aver that the defendant "took the coal," "seized and took," "wrongfully deprived the plaintiff of the use and possession of, and converted the same to his own use." To this declaration the defendant pleaded that he did not commit the wrongs alleged therein, and that he did the acts complained of by the license and consent of the plaintiff. After the testimony had been offered, the rulings as to which form the subject of the first and second bills of exception, which will be hereafter considered, the appellee and appellant severally offered his respective series of prayers, all of which were granted, the appellant excepting to those granted at the instance of the appellee.

It is suggested in argument, that notwithstanding the facts were submitted to the jury, with the law which should govern them, according to the theory of each party, yet the propositions were so conflicting that it was

impossible for the Court to determine which the jury adopted.

Where prayers granted on the same hypotheses of fact are so inconsistent, that conformity with one necessarily implies disregard of the other, they are calculated to mislead, and therefore erroneous ; but instructions founded upon different hypotheses are not liable to that objection. Moreover, it must appear, not only that the instruction was erroneous, but that the appellant was prejudiced by the error.

Without attempting to recapitulate the several hypotheses embodied in the respective series of prayers, it is sufficient to say that the proposition of the appellee was, that the title to the coal reverted to him upon the refusal of the consignee to accept it, and the latter had no right to authorize the sale of the coal on the consignor's account, by the persons in charge, without the consignor's consent.

In the language of the plaintiff's first prayer, " that after such refusal the plaintiff, at his election, had the right to rescind the said contract of sale, and that upon such election the title to the same vested in him."

The counter proposition of the appellant is not based upon the fact of refusal by the consignee, or the assumption of an election to rescind, but that if the consignees, on notice of the arrival of the coal could not unload it, and directed the persons in charge of it to sell it or do the best they could with it, which facts (if found) vested the title to the coal in Heiston & Co., and the plaintiff could not recover under the pleadings in the cause.

The "refusal to accept" is a very different disposition from that relied on in the appellant's first prayer, and so, of all others in his series, the facts on which the propositions of the appellant are predicated, are materially different from those relied on by the appellee.

But it is said there was no evidence to sustain the appellee's prayers, and they assume the fact of a rescission

of the contract.   There was evidence that those in charge of the boat, upon the refusal of the consignees, or their failure to receive the coal, had telegraphed to Cumberland for orders, and been ordered to sell for what they could get, and that they did sell the same, but one load was taken by the appellant.   This evidence, if believed, was sufficient to warrant the instruction granted, as far as the same depended on the fact of his election to rescind. Since the amendment to the Code by the Act of March, 1862, chapter 154, it is too late to raise the objection to the prayer, that the fact of electing to rescind was assumed, that objection not appearing to have been raised and decided below.

The appellant further contends to show the error of the first and third prayers of the appellee, that the facts in evidence proved a delivery of the coal to the consignees, whereby the property in the coal vested in them.

This position may be legally correct, as between consignor and consignee, and yet such a special property exist in the former, as entitles him to an action for a tortious taking of the goods.

The authorities cited by appellant and appellee sustain this view.

"In case the vendee refuses to accept articles sold to him, the vendor may consider them as his own, if there has been no delivery, (of course an actual delivery is meant,) or he may consider them as the vendee's, and has the right to sell."   This right is as much for the benefit of the vendor as the vendee—indeed it is for the protection of the former, particularly against loss, although it may enure to the benefit of the latter by reducing his liability *pro tanto*.   2 *Parsons on Contracts*, 484, *Edition of* 1855.

In the case of *Sands & Crump vs. Taylor & Lovett*, 5 *Johns. Rep.*, 410, Kent, C. J., uses this language:

"The vendor ought to have the benefit of that princi-

ple as well as the vendee. It would be unreasonable to oblige him to let the article perish on his hands and run the risk of the solvency of the buyer.''

Such was the position of the vendor in this case, according to the evidence. The vendee refused to receive the cargo consigned to him. There was no alternative left the vendor but to sell the coal or abandon it. The right to sell necessarily involves a right of property, which he must have a right to protect, by action against third persons, who seized or carried it away without his consent.

That a consignor may support an action of trover or trespass at common law, further appears from 1 *Chitty's Pleadings*, 6, 153, 170, *note* 3, (13 *Amer. Edition;*) 7 *Term. Rep.*,12 ; 2 *Wm. Saunders*, 47, (*b.*)

As to the second prayer of the appellees, which referred to the measure of damages. By this, the jury were instructed, if they believed the defendant wrongfully took the cargo, without the consent of the owner, and the same belonged to the plaintiff; in that case they were not confined in this action, in fixing the damages, to the mere amount of the value of the coal when so taken by the defendant.

It is objected this instruction should not have been granted, because it was designed to enable the appellee to recover double the value of the coal under the Act of 1862, chapter 114, which could not operate on acts done beyond the limits of the State ; and, also, assuming the counts were partly in trespass and partly in trover, the prayer being generally applicable to all the counts, was erroneous, as it prescribed a standard of damages not recoverable in trover.

In the consideration of the other prayers embraced in this exception, we have deemed it unnecessary to decide upon the effect of the Act of 1862, chapter 114, there being a right of action in the appellee independently of its provisions.

For the same reason we shall waive the first objection to the appellee's second prayer, particularly as there is no necessary connection between the Act of Assembly and the prayer, in our judgment, when the latter is properly construed. There is not even a remote allusion to the double value of the property as the measure of damages, but a bare denial that the plaintiff is confined to the mere amount of the value of the coal, if the jury believed the defendant wrongfully took the cargo. Nor is the prayer of that general character which is supposed to make it erroneous, because it proposes a standard of damages not applicable to all the counts.

The facts on which it is founded are averred only in the counts in trespass, the gist of which is, that the defendant wrongfully took the cargo of coal without the consent of the owner; the special counts charged the defendant with *fraudulently* receiving and purchasing without the consent of the owner, etc., which are injuries of a distinctly different character in law.

The rule of damages, as applicable to the counts in trespass, was properly announced in the prayer.

A plaintiff in an action of trespass for taking away goods may give in evidence, for the purpose of enhancing the damages, the circumstances which accompanied and gave character to the wrong, and the jury had the right to consider those circumstances for the purpose of increasing the damages. *Schindel vs. Schindel,* 12 *Md. Rep.,* 122; *Snively & Keyes vs. Fahnestock,* 18 *Md. Rep.,* 395.

In the present case there were circumstances in evidence tending to aggravate the damages, and which, if believed by the jury, entitled the appellee to more than the mere amount of the value of the property in dispute.

Having disposed of the exception to the prayers, we will consider those taken to the evidence. The first bill of exceptions was taken to the admission of the testimony of the steersman of the boat "Boyer and Watson," who proved,

Young vs. Mertens.

among other things, that he was in the habit for a long time prior to the time when he ran that boat to Georgetown, in January, 1863, of boating coal on the Chesapeake and Ohio Canal, and frequently had seen boat loads of coal weighed, and thus acquired a knowledge of the number of tons contained in different boats, and that he was satisfied that at the time the coal was taken from the "Boyer and Watson" she contained one hundred and sixteen tons. This exception is founded upon the theory that as the coal had been weighed, and a weigh bill stating the exact quantity had been given the plaintiff or his agent, it should have been produced as the best evidence of the quantity taken from the boat. The course of dealing proved by the plaintiff in the case, shows that the way bill was not evidence of a higher nature than that given by the steersman. The manifests or way bills were all made out at second-hand. The weighing at the mines showed only what was placed in the cars. Their contents were transferred to the boat, the weight of the respective car loads being transcribed and computed by the wharf agent, by whom they were sent in the form of a wharf ticket to the collector of tolls of the Canal Company, which officer makes out the way bill or manifest of the cargo. The way bill is given to the captain as his passport through the locks, and left with the collector at Georgetown. It is apparent from the several hands through which the article of freight passed, between the mines and its destination at Georgetown, where it was taken by the defendant, that the way-bill was not better, if as good, testimony of the actual contents of the boat, as that of the steersman. The manifest was but a copy of a copy, whereas the oral evidence was direct and positive as such testimony in the nature of things could be.

The testimony of Joseph E. Potts, the exclusion of which was the ground of the appellant's second bill of

exceptions, was offered by the appellant to prove that the appellee had stopped the payment of the price of the coal to the appellant. The witness deposed he did so by "a notice filed in the office, signed by himself and his attorney, dated 12th January, 1863." This was giving parol proof of a written instrument, without showing its loss or accounting for its absence, or laying any ground for the introduction of secondary evidence, and was properly rejected. There being no error in the rulings of the Court below in the several bills of exceptions by which the appellant was injured, the judgment below will be affirmed.

*Judgment affirmed.*

(Decided 29th May, 1867.)