A. INGRAM, Appellee, v. CARL WACKERNAGEL, Appellant.

1.   Contracts: PATENT AMBIGUITY: EVIDENCE. An agreement for the purchase of cattle, then being fed by the vendor, dated September 26, 1888, and providing for the delivery of "two loads now, two loads in two weeks, one hundred head in October next, and the remainder by the twenty-fifth of November," presents no ambiguity as to the time when the last of the cattle were to be delivered.

2.   ———: BREACH OF: PERFORMANCE BY PARTY SEEKING DAMAGES. The above agreement provided that the cattle should be yarded at the vendor's shrink lot for twelve hours at night before shipment. The date provided for the last shipment fell on Sunday, and on that account the cattle were not put into the shrink lot until the night of the twenty-sixth. Held, that the vendor sufficiently complied with the contract.

3.   ———: SALES OF PERSONAL PROPERTY: BREACH: REMEDY OF VENDOR. On the evening of November 26 the vendor telegraphed the vendee that he would hold the cattle until the next day subject to his order, and that if the cattle were not then received by the vendee he would take steps authorized by law to protect himself. Held, that, conceding such a notice was necessary, the vendor was not obliged to state what action he would take to indemnify himself against loss.

4.   ———: ———: ———: ———. The market price in M. where said cattle were kept being controlled by the market price in C., and it not appearing that a better price could have been obtained in M., held, that the vendor had a right to ship the cattle to C., and that if he did so in good faith, and sold them for the best market price he could procure, he was entitled to recover of the vendee the difference between the contract price and the price received, with interest, after deducting the necessary expenses for shipping; and that evidence was admissible as to prices in C. from November 26 to the date of sale.

5.   Appeal: ERROR WITHOUT PREJUDICE. A judgment will not be reversed in the supreme court because of errors of the district court in the admission of evidence which were without prejudice to the appellant.

6.   Practice: ADMISSION OF EVIDENCE. Where a party upon the trial of a cause claims the right, and is permitted, to introduce evidence that is incompetent, he cannot complain of the introduction of evidence in rebuttal thereof.

*Appeal from Taylor District Court.*—HON. R. C. HENRY, Judge.

THURSDAY, MAY 28, 1891.

ACTION on an agreement for the purchase of cattle. There was a trial by jury, and a verdict and judgment in favor of the plaintiff. The defendant appeals. *Affirmed.*

*L. T. McCoun* and *A. J. Johnson,* for appellant.

*Laughlin & Campbell, Crum & Haddock* and *R. H. Spence,* for appellee.

ROBINSON, J.—The agreement in suit is contained in two instruments in writing, of which the following are copies:

"I have this day bought of A. Ingram two hundred and eighty-two cattle, at five dollars and twenty-five cents per [hundredweight gross, to be delivered as follows: Two loads now, and two loads in two weeks, one hundred more in October next, the remainder by the twenty-fifth of November. Said cattle to be yarded at Ingram's scales twelve hours at night. Paid on the above, five hundred dollars.

"MT. AYR, IOWA, September 26, 1888.

"CARL WACKERNAGEL."

"I, A. Ingram, this day sold to C. Wackernagel two hundred and eighty-two cattle, now being fed by me in my feed lots, at five dollars and twenty-five cents per hundredweight gross, to be delivered as follows: Two loads now, and two loads in two weeks, one hundred head in October next, the remainder by the twenty-fifth of November. Said cattle to be yarded at my shrink lot twelve hours over night. Paid on the above, five hundred dollars.

"MT. AYR, IOWA, September 26, 1888.

"A. INGRAM."

Before the twenty-sixth day of November, 1888, the defendant had accepted all but one hundred and thirteen of the cattle specified in the agreement. On that day the plaintiff yarded the cattle which the defendant had not taken, and sent him a telegram, as follows:

"MT. AYR, IOWA, November 26, 1888.
" *To C. Wackernagel, Clearfield, Iowa:*

"Yard cattle to-night; will hold to-morrow, and protect myself afterwards.        A. INGRAM."

The cattle so yarded were weighed the next morning, and then held until November 27, when the defendant not having appeared, they were shipped to Chicago, and there sold. This action is brought to recover the difference between the agreed price and the amount realized from the Chicago sale. The defendant denies that he has failed to perform his part of the agreement, and pleads several counterclaims. The judgment in favor of the plaintiff was for the sum of fourteen hundred and eighty-one dollars and thirty-seven cents.

I. The appellant contends that the agreement in suit is fatally defective by reason of an ambiguity as to the date of its performance, and that the defect is patent, and cannot be cured by parol evidence. When the subject-matter and language are considered, we think there is no ambiguity as to the time when the last of the cattle were to be delivered. The agreement referred to cattle which were being fed by the plaintiff at the time it was made. A part of them were to be delivered at once, a part in two weeks, one hundred the next month, and the remainder "by the twenty-fifth of November." There is nothing in the language used to justify the presumption that a delay of more than one year in delivering a part of the cattle was contemplated. The natural and only reasonable conclusion to be drawn

1. CONTRACTS: patent ambiguity: evidence.

from the clause, "one hundred more in October next, the remainder by the twenty-fifth of November," is that the November referred to immediately followed the October specified. That interpretation is in harmony with a common form of speech, and is sustained by authority. *Whitney v. Crosby*, 3 Caines, 90.

II. It is claimed that the plaintiff did not so far perform his part of the agreement as to be entitled to demand a strict performance on the part of the defendant; that the plaintiff did not give due notice of his intention to sell the cattle; and that he had no right to sell them in Chicago, and charge the defendant with the difference between the contract price and the price realized. The twenty-fifth day of November, 1888, was Sunday, and the time for performing the agreement was, in consequence, extended to the next day. No act necessary to the performance of the agreement could have been required on Sunday. *Post v. Garrow*, 18 Neb. 682; 26 N. W. Rep. 580; *Stryker v. Vanderbilt*, 27 N. J. Law, 71; *Salter v. Burt*, 20 Wend. 206; *Sands v. Lyon*, 18 Conn. 29; *Avery v. Stewart*, 2 Conn. 69; *Barrett v. Allen*, 10 Ohio, 432. Delivery of the cattle on that day would have been illegal. The cattle were required to be kept in the shrink lot twelve (not thirty-six) hours; and, therefore, could not have been placed in it Saturday, to be held there until Monday. The shrinking of the cattle was a part of, and necessary to, a delivery; therefore, it was a sufficient compliance with the agreement to place them in the lot on the night of the twenty-sixth of November for that purpose.

III. The telegram sent by the plaintiff in the evening of November 26 was received by the defendant at noon of the next day. It informed him, in effect, that the cattle would be held on that day subject to his order, and that, if not received by him, the plaintiff

*2. ——: breach of: performance by party seeking damages.*

*8. ——: sales of personal property: breach: remedy of vendor.*

would take steps authorized by law to protect himself. We do not think it was necessary for the notice to state just what action the plaintiff would take to indemnify himself against loss, even if it be conceded that a notice was required. See *Pollen v. Le Roy*, 30 N. Y. 554. The defendant knew that the time given him by the agreement in which to accept the cattle was at hand, and about to expire, and he must be presumed to have known what right his failure to receive the cattle would give to the plaintiff. The cattle market was declining. Promptness of action was important. Yet, with knowledge of all these facts, he made no preparation to carry out the agreement on his part, and evidently had no intention of performing it.

IV. The value of such cattle at Mt. Ayr and vicinity, especially for the number in controversy, was 4. —: —: —: dependent upon and governed by the market price in Chicago. The defendant bought and shipped to that market. It is not shown that a better price could have been obtained in Mt. Ayr. The court, therefore, properly charged the jury that if the plaintiff had performed the agreement on his part, then upon the default of the defendant he had a right to ship the cattle to Chicago; and, if he did so in good faith, and sold them for the best market price he could procure, he was entitled to recover the difference between the contract price and the price received, with interest, after deducting the necessary expenses of shipping. The evidence shows, without material conflict, that the cattle were shipped to Chicago, and sold on the market in the usual manner, for the best price which could be obtained at the time of sale. That was a sufficient compliance with the requirements of the law to fix the liability of the defendant. 2 Benjamin on Sales, sec. 1165; *Pollen v. Le Roy*, 30 N. Y. 554; *Dustan v. McAndrew*, 44 N. Y. 76; *Lewis v. Greider*, 51 N. Y. 236; *Rice v. Manley*, 66 N. Y. 87; *Bagley v. Findlay*,

82 Ill. 524; *Ullman v. Kent*, 60 Ill. 271; *Young v. Mertens*, 27 Md. 126. Since the plaintiff was authorized to sell in Chicago, evidence as to prices and methods of conducting business in the Chicago market, when the cattle were shipped and sold, was material and proper. Nor should the evidence have been confined to Chicago prices on the twenty-sixth and twenty-seventh days of November. The cattle were received in Chicago on the thirtieth of November, too late to sell on that day. There is evidence which tends to show that the market was not good for a few days, and in consequence there was some delay in making the sale. Evidence of prices from the thirtieth of November until the day of sale was proper. The appellant complains of the refusal of the court to allow evidence as to the Chicago prices a few days after the sale; but, since there is no attempt to hold the plaintiff responsible for selling the cattle prematurely, the excluded evidence would not have been relevant to any issue in the case, and was immaterial. Moreover, the prices in question were shown by other witnesses for the defendant, and are not questioned.

V. The appellant complains of the rulings of the court in permitting the plaintiff to examine him as to his intent with respect to paying the claim of the plaintiff before this action was brought. It is at least doubtful if the questions objected to were proper, but the answers given show clearly that no prejudice resulted from the rulings in question. Therefore, their correctness need not be determined.

5. APPEAL: error without prejudice.

VI. The appellant complains of the refusal of the court to suppress the deposition of Charles Robinson, and to strike therefrom interrogatories numbered from five to fifteen, inclusive, and the answers thereto. The ground of objection to the deposition as a whole was that it was not properly authenticated. The defect

alleged was substantially the same as that held to be immaterial in *Vaughn v. Smith*, 58 Iowa, 556, and following the rule of that case the court rightly refused to suppress the deposition.

The objection to the portions of the deposition specified were that the testimony therein contained related to the sale of one hundred and thirteen head of cattle in Chicago and the markets of that city. For reasons already made apparent in our consideration of this case the testimony was competent, and properly submitted to the jury.

VII.  The defendant testified that he had lost thirty-two hundred dollars by the plaintiff, before this action was brought, through his misrepre-

6. PRACTICE: admission of evidence.

sentations. The evidence was given in narrative form, and there was no opportunity to object to the statement before it was made. The plaintiff, in rebuttal, offered the evidence of a witness to prove declarations of the defendant to the effect that he had made a profitable contract with the plaintiff; and stated that, if the testimony as to the loss of thirty-two hundred dollars were stricken out, he would not insist upon the evidence offered. The defendant objected to the striking out of the testimony referred to, and it was permitted to remain, and the rebutting evidence offered by the plaintiff was received. It is clear that the testimony of the defendant in regard to his loss should not have been received, and that when the plaintiff claimed the right of rebuttal it should have been stricken out by the court on its own motion, if necessary; but since the defendant contended that it was competent, and it was permitted to remain in the record for that reason, he cannot now be heard to complain that evidence in rebuttal was received.

VIII.  Appellant complains of the refusal of the court to give certain instructions which he asked. It

is sufficient to say, without setting them out, that there was no error in refusing them. Some were objectionable because they sought to submit to the jury matters in regard to which there was no controversy, and some were erroneous.

IX. The conclusions we have announced dispose of all questions which we are required to determine. We discover no sufficient reason for disturbing the judgment of the district court. The evidence shows that it does substantial justice between the parties. The defendant has relied upon technical grounds to defeat a just liability, resulting from an agreement which appeared to be reasonable, and which he entered into freely. The plaintiff fulfilled its requirements on his part, and is entitled to compensation for the wrong done by the failure of the defendant. AFFIRMED.