## OLSON v. RYDL.

In an action for breach of a contract to buy, there being a conflict in the evidence, the sum to be awarded is properly for the jury, and its verdict cannot be disturbed by the Supreme Court, especially where the error, if any, is in favor of the buyer.

An assignment of error may be regarded as abandoned, where not argued either in appellant's brief or orally.

Under Civ. Code, § 2303, subd. 2, defining the measure of damages for breach of an agreement to buy to be the excess due from the buyer under the contract over the value to the seller, with the excess of the expense incurred in carrying the property to market over what would have been incurred had the buyer accepted it, expense incurred in shipping cattle to a market was properly submitted as an element of damage in an action for breach of an agreement to buy them.

In an action for breach of an agreement to buy cattle, it was competent to consider the net amount received by the seller at a sale on the nearest available market, as well as the value of the cattle at the place of delivery, to determine the seller's damages.

(Opinion filed, April 5, 1910.)

Appeal from Circuit Court, Beadle County. Hon. CHAS. S. WHITING, Judge.

Action by A. A. Olson against Frank L. Rydl. From a judgment for defendant and an order denying a new trial, plaintiff appeals. Affirmed.

*T. H. Null,* for appellant. *Gardner, Fairbank & Churchill,* for respondent.

CORSON, J. This is an appeal by the plaintiff from a judgment entered in favor of the defendant, and from the order denying a new trial. The action was instituted by the plaintiff to recover $100 alleged to have been advanced by him to the defendant, and $300 damages sustained by him by reason of the breach of the following contract: "Oct. 7th, 1907. I hereby agree to deliver to A. A. Olson 60 head of steers on the first day of January, 1908, at 4 cents per pound, and agree to let him pick them out of my herd of cattle within one week from date. I hereby agree to feed these cattle corn at least once a day and put them in good condition for market, and I hereby acknowledge payment of $100.00 on same. [Signed] A. A. Olson. Frank L. Rydl." The defendant in his answer admitted the making of the contract and receipt of the $100, that the live stock was selected by the plaintiff, and defendant denied each and all of the other allegations of the complaint. The defendant for a counterclaim alleges that he had fully complied with all the terms of the contract to be by him performed, and on January 1, 1908, he notified the plaintiff that he was ready to deliver the said live stock in accordance with said contract; that plaintiff refused to accept them, and informed the defendant that he would not carry out the terms of said contract; that the defendant thereupon shipped the said cattle to the Chicago market, for which he received net $1,326.21, which was the market value of said live stock at Huron on the 1st day of January, 1908; that the said live stock on the 4th day of January, 1908, at the Huron stockyards, weighed 48,520 pounds; and that at 4 cents per pound said live stock would have been of the value, under the terms of said contract, of $1,940.80; that the difference between the contract price of said cattle and the market price of said cattle on the 1st day of January was $614.59; that the defendant incurred expenses in attending said cattle to market

in the sum of $53, and he prays judgment for $667.92 against the plaintiff, with interest from January 1, 1908, and the costs of the action, less the $100 paid to him by the plaintiff. To this counterclaim the plaintiff replied, denying certain allegations therein contained. The trial was had to the court and a jury, and the jury returned a verdict in favor of the defendant for the sum of $254.72.

The plaintiff in his brief claims that the record presents two questions for consideration, viz.: "(1) Was the difference between the contract price of 4 cents per pound and the amount realized on the sale in Chicago the true measure of defendant's damage? (2) Can the verdict for $254.72, which does not respond to the measure of damages as laid down by the court in its charge to the jury, be sustained?" It is claimed by the appellant that the evidence shows that the cattle weighed at Huron 48,520 pounds; that the contract price was 4 cents per pound, and, had plaintiff taken the cattle, defendant would have been entitled to $1,940.80 less the $100 received by him; and that defendant, in fact, received net for the shipment to Chicago $1,326.21.

It is contended by the appellant that the defendant's measure of damages is determined by section 2303 of the Civil Code, which provides as follows: "The detriment caused by the breach of a buyer's agreement to accept and pay for personal property, the title to which is not vested in him, is deemed to be: (1) If the property has been resold, pursuant to section 2151, the excess, if any, of the amount due from the buyer, under the contract, over the net proceeds of the re-sale; or (2) if the property has not been resold in the manner prescribed by section 2151, the excess, if any, of the amount due from the buyer, under the contract, over the value to the seller, together with the excess, if any, of the expenses, properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted it." Section 2151 of the Civil Code reads as follows: "One who sells personal property has a special lien thereon, dependent on possession for its price, if it is in his possession when the price becomes payable; and may enforce his lien in like manner as if the property was

pledged to him for the price" And section 2324 reads as follows: "In estimating damages the value of property, to a seller thereof, is deemed to be the price which he could have obtained therefor in the market nearest to the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed, with reasonable diligence, for the seller to effect a re-sale." It is conceded that defendant's lien upon the property was not enforced in a manner provided for by section 2151, consequently the first subdivision of section 2303 is not applicable to the case at bar. It will be noticed that, under subdivision 2 of section 2303, it is provided that, if the property has not been resold in the manner prescribed in the section referred to, the excess, if any, of the amount due from the buyer under the contract, over and above the value to the seller, together with the excess, if any, of expenses properly incurred in carrying the property to market, over those which would have been incurred for the carriage thereof, if the buyer had accepted the property, constitutes the measure of the damages. There was a conflict in the evidence as to the value of the live stock in controversy in the market at Huron, and there was evidence tending to prove that Chicago was the nearest available market for that class of property. The evidence is quite voluminous, and no useful purpose would be served by reproducing it in this opinion. It is sufficient to say that the evidence tended to prove that on the 1st day of January, 1908, the live stock, in the condition in which it was shown to be, was worth in the Huron market between 3 and 4 cents per pound, and, there being a conflict in the evidence as to the precise value of the property in the Huron market, it was within the province of the jury to determine the value.

It is contended by the respondent that it was not necessary that the jury should have selected the testimony of any one witness, and returned a verdict in exact accordance with such testimony; nor need the verdict correspond to any testimony with absolute mathematical accuracy, that the jury had before them a complete description of the live stock, and the testimony of various witnesses as to its market value, and from all this testimony it was the province of the jury to determine what the actual market

value of the property was. We are of the opinion that the respondent is right in this contention. It appears from the undisputed evidence that the stock at the time of its shipment at Huron weighed 48,520 pounds, and that the contract price the defendant should have received was $1,940.80; but, assuming that the live stock at Huron was of the value of $3.25 per hundred pounds, it was worth $1,576.90, making defendant's damages by reason of the refusal of plaintiff to accept and pay for the cattle, $364.10, and, deducting from this the $100 received by the defendant, a balance of $264.10 would be due the defendant, which was substantially the amount arrived at by the jury. There being a conflict in the evidence, the sum awarded to the defendant was properly for the jury to determine, and their verdict cannot properly be disturbed by this court. Especially is this so where the only error, if there was any, of the jury, was in favor of the plaintiff, in that they failed to give the defendant a verdict for the sum for which it might have been given under the evidence in the case.

The first seven assignments of error we may regard as abandoned, as the learned counsel for the appellant has not argued either of those assignments, either in his brief or orally. The eighth assignment of error is: "The court erred in submitting to the jury the expense incurred by defendant in shipping the cattle to Chicago as an element of damages in this action." Clearly this assignment is untenable, for the reason that by subdivision 2 of section 2303 it is provided that, if the property has not been resold in the manner prescribed by section 2151, the excess, if any, of the amount due from the buyer under the contract over the value to the seller, together with the excess, if any, of the expenses properly incurred in carrying the property to market over those which would have been incurred for the carriage thereof, if the buyer had accepted it, is recoverable by the party claiming a breach of the contract. And by the ninth assignment of error it is claimed that the court erred in submitting to the jury as a measure of damages the difference between the contract price and the net proceeds received by defendant for the sale of the cattle in Chicago. The court admitted in evidence the

report of sale of the live stock in Chicago, together with the evidence of the value of the same in Huron, for the purpose of enabling the jury to determine the price of the stock per pound on the 1st of January, the time the plaintiff had stipulated to receive the same from the defendant. One witness who was shown by his testimony to be a large dealer and shipper of live stock testified that the price of live stock in Huron was usually determined by the price of similar live stock in Chicago, less 75 cents per hundred pounds, expenses for freight, commissions, etc., and there was also evidence tending to prove that Chicago was the nearest available market for the sale of the number of live stock specified in the contract. We are of the opinion, therefore, that the court commited no error in admitting in evidence the report of the sale of the live stock in Chicago, which it was stipulated by the parties was sufficiently authenticated, and that it was competent for the jury to take into consideration the net amount received by the defendant on the Chicago market, as well as the value of the same at Huron, for the purpose of determining the amount of defendant's damages, but the court in its instructions to the jury did not limit them in finding their verdict to the value of the live stock as reported by the sale in Chicago, but left them from all the evidence to determine the amount of damages the defendant had sustained by reason of the failure of the plaintiff to accept the live stock under the contract. Sutherland on Damages (3d Ed.) § 647; Ingram v. Wackernagel, 83 Iowa, 82, 48 N. W. 998.

It is contended by the appellant that, where the vendor retains the property without a sale according to law, it is immaterial whether he keeps the property or sells it. When the defendant tendered the cattle on January 1st at Huron, and the plaintiff refused to accept them, the rights of the parties were then fixed, and no subsequent act of sale of the property, except a sale in accordance with the statute, would alter or prejudice the rights of either party. If defendant had taken his cattle back to his farm, his right to damages would have been as complete as when he sold the cattle in Chicago. This proposition may be conceded,

but it does not, in our view of the case, change the relative rights of the parties. In case the defendant had not disposed of his property, but had retained it, the provisions of section 2293 of the Civil Code would have probably been applicable, which provides: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract, which are not clearly ascertainable in both their nature and their origin." But subdivision 2, before referred to, seems to contemplate that the seller, after the buyer has refused to accept the property, will dispose of it in the market, for it will be noticed that he is entitled to recover, not only the excess in the amount, but the expenses properly incurred in carrying the property to market. The case of Stanford v. McGill, 6 N. D. 573, 72 N. W. 938, 38 L. R. A. 760, cited by the appellant, is not in point, for the reason that in that case there was no evidence proving or tending to prove the value of the property at Kelso, the place of delivery. In the case at bar, however, there was evidence proving or tending to prove the value of the property at Huron the assumed place of delivery.

Our conclusion, therefore is that the jury necessarily found by their verdict that the defendant had complied with the terms of his contract; that the plaintiff had failed to comply with the contract on his part; that the jury by their verdict have determined the amount of damages which the defendant has sustained, and that there is ample evidence in the record to support the verdict. In our opinion the court in its charge fully and fairly presented the case to the jury.

Finding no error in the record, the judgment of the court below and order denying a new trial are affirmed.

WHITING, P. J., taking no part in the decision.