DAVE BOGREN, Appellee, v. DAVID J. CONN, Appellant.

No. 44160.

MARCH 15, 1938.

Dyer, Jordan & Dyer, for appellee.

Doran & Doran, for appellant.

MITCHELL, J.—David Bogren and one O. E. Challgren were engaged in the buying and selling of livestock as a co-partnership at Harcourt, Iowa. It is their claim that they sold to David J. Conn, who was a stock buyer, with yards at Boone, Iowa, 24 head of cattle, at a certain agreed price. The deal was made by E. C. Payne, who, it was claimed by the partnership, was the agent of Conn. This was denied by Conn. The cattle were brought to Boone and a check signed by Conn was given for the purchase price. It is Conn's contention that while he signed the check he authorized his employee to fill it in for a certain amount and to use it in paying E. C. Payne for the cattle when the weights had been determined, and that at no time did he purchase the cattle from Bogren and Challgren. The cattle were brought to the yards of Conn at Boone, and on the next morning Conn stopped payment on the check. Bogren and Challgren, claiming that they were unable to find a market for the cattle at Boone, shipped them to Chicago, where they were sold on the open market.

This action is brought to recover the difference between what it is claimed Conn purchased the cattle for and what Bogren and Challgren received on the open market. Challgren assigned his interest to Bogren, and this action was commenced. There was a trial to a jury, which returned a verdict in the amount of $201.66. Conn has appealed to this court.

While there was a dispute between the parties to this action in regard to the question of whether there had been a purchase of these cattle by appellant, that question is not now before us. It was settled by the jury. The sole question upon which the appellant relies for reversal is that the court erred in giving the instruction covering the measure of damages. The following is the material part of the instruction so bitterly complained of:

"The measure of recovery in a case of this kind, in a general way, may be said to be such sum as will fairly and reasonably compensate the plaintiff for the loss, if any, resulting to him by reason of the buyer's refusal to accept the property sold.

"In this connection, you are instructed that where the buyer refuses to accept property purchased by him it is the duty of the seller to sell the property within a reasonable time and if he does so in the exercise of reasonable care and judgment and within a reasonable time he is entitled to recover from the buyer the difference between the net amount realized by him from the resale and the contract price. Where there is an open market at the place of delivery called for by the contract it is ordinarily the duty of the seller to make the resale at such place of delivery. If, however, there is no open market at the place of delivery, or, if a better market is available elsewhere, or, where the market price at the place of delivery is determined by the market price at another place, the seller may resell on the open market at such other place. The requirement of the law in this respect is that the seller exercise reasonable care and judgment in making the resale and obtain, if he reasonably can, the best available market.

"So in this case, if you find that the plaintiff is entitled to recover, the measure of his recovery is such sum as in your fair and impartial judgment will fairly and reasonably compensate the claimed partnership of plaintiff and the witness Challgren for the loss and damage, if any, sustained by them by reason of the defendant's failure and refusal to accept the cattle in question. In this connection, if you find that the plaintiff caused the cattle to be resold upon the Chicago market following the refusal of the defendant to accept the cattle, and that plaintiff acted with reasonable care and judgment in making such resale at the time and place thereof and made a reasonable effort to resell on the best available market, then plaintiff is entitled to recover the difference between the contract price of the cattle in question and the net amount realized upon resale of the cattle."

The evidence shows that the cattle were delivered to the stockyards of appellant at Boone. The check was delivered, but before it was cashed payment was stopped. It is the testimony of appellee that he did not know of any place where these cattle could be sold in the town of Boone or nearby. The market was

falling rapidly. The cost of keeping the cattle in the yards was high. There was a direct line of railroad between Boone and Chicago—the Chicago, Northwestern Railway. True, there is some conflict in the evidence as to whether or not there was any other place in Boone that these cattle could have been sold. However, to determine conflicts we have juries, and the jury in this case determined it adversely to the appellant.

In the case of Ingram v. Wackernagel, 83 Iowa 82, at page 86, 48 N. W. 998, 999, this court said:

"The value of such cattle at Mt. Ayr and vicinity, especially for the number in controversy, was dependent upon and governed by the market price in Chicago. The defendant bought and shipped to that market. It is not shown that a better price could have been obtained in Mt. Ayr. The court, therefore, properly charged the jury that if the plaintiff had performed the agreement on his part, then upon the default of the defendant he had a right to ship the cattle to Chicago; and, if he did so in good faith, and sold them for the best market price he could procure, he was entitled to recover the difference between the contract price and the price received, with interest, after deducting the necessary expenses of shipping. The evidence shows, without material conflict, that the cattle were shipped to Chicago, and sold on the market in the usual manner, for the best price which could be obtained at the time of sale. That was a sufficient compliance with the requirements of the law to fix the liability of the defendant. 2 Benjamin on Sales, sec. 1165; Pollen v. Le Roy, 30 N. Y. [549], 554; Dustan v. McAndrew, 44 N. Y. [72], 76; Lewis v. Greider, 51 N. Y. [231], 236; Rice v. Manley, 66 N. Y. [82], 87 [23 Am. St. Rep. 30]; Bagley v. Findlay, 82 Ill. 524; Ullman v. Kent, 60 Ill. 271; Young v. Mertens, 27 Md. [114], 126."

And, as in the cited case, so in the case at bar there is no showing that a better price could have been obtained in Boone. There is no evidence that the price received in Chicago was not fair and reasonable, or that a better market was available elsewhere. The evidence discloses that the Iowa market for the different grades of cattle are in most instances fixed and determined, to a great extent, by the Chicago market. The cattle were delivered to appellant on the 22d day of May, 1934. Check issued on that date and was deposited on the 23d. Payment was

stopped on it on the same day. Appellee went to Boone to ascertain the trouble, and appellant informed him he would not take the cattle. The next day, the 24th, they were shipped to Chicago and sold there on the 28th. The jury found from the evidence that appellee acted promptly, and there is sufficient evidence to sustain that verdict.

One of the complaints of appellant is that he would have bought these cattle at Boone if appellee would have discounted the price almost $40, and he argues that his willingness to buy them at a reduced price shows there was an open market at Boone. With this theory we cannot agree. Under appellant's theory the seller would suffer a loss for which he certainly would not have a right of recovery. The loss in this case was occasioned by the purchaser, not by the seller. On all the material fact questions the jury found against the appellant. The instruction given by the able and distinguished trial judge was correct. It necessarily follows that the judgment must be, and it is hereby, affirmed.—Affirmed.

Chief Justice and all Justices concur.