# FREDERICK E. WOODWARD

*vs.*

## DUDLEY A. TYNG & COMPANY.

*Vendor and Vendee. Stocks: resale at vendee's risk; diligence;*
*notice; value of stock; quotations. Evidence: when erro-*
*neous rulings not reversible error. Witnesses: for-*
*eign depositions; failure to examine; infer-*
*ences. Cross-examination: restricted to*
*evidence adduced on examination*
*in chief. Prayers: theories*
*of the different parties.*

Whether a vendor has used reasonable diligence in the con-
duct of a resale upon the default of the buyer is a question of
law for the Court, upon the facts to be found by the jury.

p. 113

A vendor's right of resale must be exercised in good faith
and at such time and by such methods and under such circum-
stances as are most likely to produce the fair value of the prop-
erty; and the burden of proof is upon him to show that the
right is so exercised. p. 113

It is not always necessary that a resale of stock by the vendor
for the account and at the risk of the vendee be made at the
stock board or at a public auction; it is only necessary for the
vendor to show that the sale was made at a fair price. p. 112

There is, in general, no obligation on the part of the vendor to notify the vendee of the time and place of sale.          p. 113

The admission, in evidence, of a stockbroker's testimony as to the value and fluctuation of certain stock within a certain time, can not present reversible error, although the stock was dealt in and quoted on a local stock exchange, when it appeared subsequently by the evidence of the secretary of the stock board that the stock, although listed, was seldom dealt in, and that the records of the stock exchange were not likely to afford exact evidence of the market prices, and also that brokers, like the one who testified, made a specialty of dealing in the stock and were well posted as to its value.     pp. 113-114

Where a material question was, whether or not a stock broker had, or had not notified a customer that he had purchased a stock for his account, the ruling of the Court as to the admissibility in evidence of the custom of brokers in general to give such notice, does not present reversible error.          p. 114

As evidence to prove the value of a certain stock, letters quoting prices, without stating how or whence the figures were taken, and without containing any direct offer for the stocks, are not admissible.          p. 115

Where the plaintiff has called the defendant as his witness, the cross-examination of the defendant by his counsel should be rigidly restricted to the subjects brought out by the examination in chief.          p. 116

Where the admission of a deposition, in evidence, is objected to, not on grounds relating to the execution and return of the Commission, but because of the substance of the deposition, Rule 25 of the Superior Court, etc., of Baltimore City, does not apply.
          p. 117

Where there is no law compelling witnesses to attend the taking of foreign depositions, a deposition of a witness as to his having endeavored to see a party whose testimony was desired, and induce her to attend and give her testimony, is inadmissible.          pp. 117-118

While both parties to a suit are entitled to have their theories of the case presented to the jury by appropriate instruc-

·tions, it is not a matter for reversal if one of the parties' granted prayers does not present the theory of the other, provided, however, that the other's theories are properly presented by his own prayers.                                              p. 119

· *Decided March 19th, 1914.*

Appeal· from the Baltimore City Court.    (HARLAN, C. J.)

. The facts are fully stated in the opinion of the Court in a former appeal of the same case in *Tyng and Company* v. *Woodward,* 121 Md. 422.

The following are the prayers of the plaintiff and defendant, with the action of the Court upon each:

*Plaintiff's First Prayer*—The plaintiff prays the Court to instruct the jury that if they find that the defendant offered the plaintiff $400 per share for fifty (50) shares of said stock and if they find that the plaintiff accepted said offer and notified the defendant of its acceptance before receiving any notice from the defendant that his said offer was withdrawn or··cancelled,·· then the plaintiff thereupon became entitled upon delivery of said· stock to ·the defendant to· receive the purchase price thereof from the defendant; and if the jury shall further find that after the plaintiff had accepted said offer and had sent certificates for said stock to· be delivered to· the defendant upon payment of a draft for said purchase price drawn upon the defendant said defendant refused to accept said stock or pay for the same and dishonoured said draft, the plaintiff was then entitled should it so elect to sell the said stock in the usual and customary manner in which said stock is sold upon the market at and for· the best price it could then obtain for the whole of said fifty (50) shares

thereof, after first giving notice to the defendant of its intention so to sell the same, and if the jury shall further find that the plaintiff did give to the defendant notice of its intention so to sell said stock and did sell the same in the usual and customary manner in which said stock is sold in the market at and for the best price then obtainable by the plaintiff for the whole of said fifty (50) shares, the plaintiff is entitled to recover in this action the difference between the price so offered by the defendant and the price obtained by the plaintiff at such resale. (*Refused as sufficiently covered by plaintiff's granted prayers.*)

*Plaintiff's Second Prayer*—The plaintiff prays the Court to instruct the jury that if they find that the plaintiff advertised the stock that it intended to resell at the defendant's risk, after notice to the defendant of its intention so to resell it, in the usual and customary way in which brokers dealing with this stock advertised the same when they desired to sell it and if the jury find that the plaintiff made such efforts to secure bidders and bids for said stock at such resale as are usual and customary among brokers who deal in this stock when they are endeavoring to sell the same, and if the jury further find that the price at which the plaintiff sold said stock was not less than the highest firm bid received by the plaintiff for the same or of which the plaintiff had notice, then the plaintiff in reselling said stock used diligence in the premises. (*Refused.*)

*Plaintiff's Third Prayer*—The plaintiff prays the Court to instruct the jury that if they shall find that the defendant agreed with the plaintiff to buy said stock at the price of $400 per share and the plaintiff agreed to deliver said stock at said price and in fact did tender the said stock to the defendant, the plaintiff is entitled to whatever profit would result to it from the said sale, and the measure of such profit in case the plaintiff did elect to resell the said stock at the defendant's risk upon the defendant's refusal to accept and pay for the same is the difference between the price obtained

at the resale and the price agreed to be paid by the defendant, provided the resale was made in the usual and customary manner in which said stock is sold upon the market, for the best price then obtainable for the whole of said fifty (50) shares by the plaintiff after the use of such diligence on the part of the plaintiff to find a purchaser for said stock as is usual and customary in the trade, and provided further that the plaintiff before reselling said stock notified the defendant of its intention so to resell the same and to charge the defendant with the loss in price if any at such resale. (*Granted.*)

*Plaintiff's Fourth Prayer*—The plaintiff prays the Court to instruct the jury that if they find that the defendant offered the plaintiff $400 per share for any part of fifty (50) shares Burroughs, meaning thereby for any part of fifty (50) shares of the capital stock of the Burroughs Adding Machine Company, and if they find that the plaintiff before receiving any notice that said offer was withdrawn, accepted the same and forwarded in due course of business to the defendant certificates properly endorsed for fifty (50) shares of said capital stock attached to a sight draft drawn against the defendant for the sum of twenty thousand ($20,000) dollars, and if they find that the defendant thereafter refused to accept and pay for said stock and dishonoured the said draft when presented to him for payment, and if they find that the plaintff then endeavored to persuade the defendant to accept and pay for said stock, and upon the defendant's continued refused so to do, gave notice to the defendant of its intention to sell said stock at the best price obtainable and to charge the defendant with the difference, if any, between the price so obtained and the price offered by the defendant as aforesaid, and if they find that the plaintiff then advertised for sale the said fifty (50) shares of stock by a circular to the trade, and that said method of advertising is the usual and customary means of placing said stock on the market among brokers and others who habitually deal in said stock, and if they find that the best bid obtained by the plaintiff for the

said stock when so advertised was $300 per share, and if they
find that the plaintiff then secured from a relative of one of
its agents a bid of $301 per share and sold said stock at this
price, and notified the defendant thereof; and if they further
find that upon demand the defendant has always refused and
still refuses to pay the difference between his said bid and
the price obtained at such resale, then the plaintiff is entitled
to recover in this action, and the measure of its damages is
the difference between the said offer of $400 per share and
the price so obtained at the resale, with interest on said dif-
ference in the jury's discretion from the date that the defend-
ant received notice of such resale; unless the jury should fur-
ther find that the said resale was fraudulently or unfairly
conducted and resulted in obtaining a lower price than the
fair market value of fifty (50) shares of said stock at that
time.    (*Granted.*)

*Plaintiff's Fifth Prayer*—The plaintiff prays the Court to
instruct the jury that there is no evidence in this case legally
sufficient to prove that the resale as testified to on the part
of the plaintiff was fraudulently or unfairly conducted or
that a less price was realized at such resale than the plain-
tiff, acting fairly and with due diligence, could have then
obtained for said fifty (50) shares of stock.   (*Refused.*)

———

*Defendant's First Prayer*—The defendant prays the Court
to instruct the jury that there is no evidence in this case
legally sufficient to entitle the plaintiff to recover, and there-
fore the verdict of the jury must be for the defendant.   (*Re-
fused.*)

*Defendant's Second Prayer*—The defendant prays the
Court to instruct the jury that under the pleadings in this
cause there is no evidence legally sufficient to entitle the
plaintiff to recover, and therefore the verdict of the jury must
be for the defendant.   (*Refused.*)

*Defendant's Third Prayer*—The defendant prays the Court
to instruct the jury that there is no evidence legally sufficient

to· entitle the plaintiff to recover under the first count of the *narr.* and therefore the verdict of the jury must be for the defendant on that count. (*Granted.*)

*Defendant's Fourth Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the second count of the *narr.* and therefore the verdict of the jury must be for the defendant on that count. (*Granted.*)

· *Defendant's Fifth Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the third count of the *narr.* and therefore the verdict of the jury must be for the defendant on that count. (*Granted.*)

*Defendant's Sixth Prayer*—The defendant prays the Court ·to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the fourth count of the *narr.* and therefore the verdict of the jury must be for the defendant on that count. (*Granted.*)

· *Defendant's Seventh Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under· the fifth count of the *narr.* and therefore the verdict of the jury must be for the defendant on that count. (*Granted.*)

*Defendant's Eighth Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the sixth count of the *narr.* and therefore the verdict of the jury must be for the defendant on that count. (*Granted.*)

*Defendant's Ninth Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the seventh count of the· *narr.* and therefore the verdict of the jury must be for the defendant on that count. (*Granted.*)

*Defendant's Tenth Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the eighth

count of the *narr.* and therefore the verdict of the jury must be for the defendant on that count.  (*Granted.*)

*Defendant's Eleventh Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the ninth count of the *narr.* and therefore the verdict of the jury must be for the defendant on that count.  (*Granted.*)

*Defendant's Twelfth Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the tenth count of the *narr.* and therefore the verdict of the jury must be for the defendant on that count.  (*Granted.*)

*Defendant's Thirteenth Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the pleadings of the seventh count of the *narr.* and that the verdict of the jury must be for the defendant as to that count.  (*Refused because covered by other instructions.*)

*Defendant's Fourteenth Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the pleadings on the eighth count of the *narr.* and therefore the verdict of the jury must be for the defendant as to that count. (*Refused because covered by other instructions.*)

*Defendant's Fifteenth Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the pleadings on the ninth count of the *narr.* and therefore the verdict of the jury must be for the defendant as to that count. (*Refused because covered by other instructions.*)

*Defendant's Sixteenth Prayer*—The defendant prays the Court to instruct the jury that there is no evidence legally sufficient to entitle the plaintiff to recover under the pleadings on the tenth count of the *narr.* and therefore the verdict of the jury must be for the defendant as to that count. (*Refused because covered by other instructions.*)

*Defendant's Seventeenth Prayer*—The defendant prays the Court to instruct the jury that if they find that the defendant offered to pay the plaintiff the sum of four hundred dollars per share for fifty shares of the capital stock of the Burroughs Adding Machine Company and shall further find that at the time of said offer the plaintiff was engaged in the stock brokerage business in Chicago, and shall further find that before the plaintiff accepted said offer the plaintiff by its agent called up the defendant over the long-distance telephone and then and there informed the defendant that it, the plaintiff, could not accept said offer of four hundred dollars per share, but could accept an offer at four hundred and five dollars per share, and if the jury shall further find that the defendant then and there withdrew said offer of four hundred dollars per share and then and there directed the plaintiff not to sell him, the defendant, any stock before submitting the price to him; and if they shall further find that the plaintiff thereafter sold to the defendant the stock referred to in the testimony in defiance of said instructions from the defendant, if they find such, then the verdict of the jury must be for the defendant. (*Granted.*)

*Defendant's Eighteenth Prayer*—The defendant prays the Court to instruct the jury that if they find that the defendant offered to pay the plaintiff the sum of four hundred dollars per share for fifty shares of the capital stock of the Burroughs Adding Machine Company and shall further find that at the time of said offer the plaintiff was engaged in the stock brokerage business in Chicago and shall further find that before the plaintiff accepted said offer the plaintiff by its agent called up the defendant over the long-distance telephone and then and there informed the defendant that it, the plaintiff, could not accept said offer of four hundred dollars per share, but could accept an offer at four hundred and five per share, and if the jury shall further find that the defendant then and there withdrew said offer of four hundred dollars per share and then and there directed the plain-

tiff not to sell him, the defendant, any stock before submitting the price to him; and if they shall further find that the plaintiff thereafter sold to the defendant the stock referred to in the testimony in defiance of said instructions from the defendant, if they find such, then under the pleadings in this cause the verdict of the jury must be for the defendant. (*Refused because of granting Defendant's Seventeenth Prayer.*)

*Defendant's Nineteenth Prayer*—The defendant prays the Court to instruct the jury that if they find that the defendant offered to buy from the plaintiff fifty shares of the capital stock of the Burroughs Adding Machine Company at and for the price of four hundred dollars a share and shall further find that the plaintiff did purchase said stock and shall further find that the plaintiff notified the defendant of the purchase of the said stock and shall further find that the defendant refused to receive the said stock and refused to pay the plaintiff for the same and shall further find that the plaintiff is and at the time of the events above mentioned was engaged in the business of a stock broker and shall further find that after the refusal of the defendant to receive and pay for the said stock, if the jury find such, the plaintiff sold the said stock without any notice to the public of the time and place of said sale, then the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Twentieth Prayer*—The defendant prays the Court to instruct the jury that if they find that the defendant offered to buy from the plaintiff fifty shares of the capital stock of the Burroughs Adding Machine Company at and for the price of four hundred dollars a share and shall further find that the plaintiff did purchase said stock and shall further find that the plaintiff notified the defendant of the purchase of the said stock, and shall further find that the defendant refused to receive the said stock and refused to pay the plaintiff for the same and shall further find that the plaintiff is and at the time of the events above mentioned was

engaged in the business of a stock broker and shall further
find that after the refusal of the defendant to receive and pay
for the said stock, if the jury find such, the plaintiff sold the
said stock without any notice to the public at the time and
place of said sale, then under the pleadings in this cause the
verdict of the jury must be for the defendant.   (*Refused.*)

*Defendant's Twenty-first Prayer*—The defendant prays
the Court to instruct the jury that if they find that the de-
fendant offered to buy from the plaintiff fifty shares of the
capital stock of the Burroughs Adding Machine Company at
and for the price of four hundred dollars a share and shall
further find that the plaintiff did purchase said shares and
shall further find that the defendant refused to receive the
said stock and refused to pay the plaintiff for the same and
shall further find that the plaintiff is and at the time of the
events above mentioned was engaged in the business of a stock
broker and shall further find that after the refusal of the
defendant to receive and pay for the said stock, if the jury
find such, the plaintiff sold the said stock without any notice
to the public of said sale, then the verdict of the jury must
be for the defendant.   (*Refused.*)

*Defendant's Twenty-second Prayer*—The defendant prays
the Court to instruct the jury that if they find that the de-
fendant offered to buy from the plaintiff fifty shares of the
capital stock of the Burroughs Adding Machine Company at
and for the price of four hundred dollars a share and shall
further find that the plaintiff did purchase said stock, and
shall further find that the plaintiff notified the defendant of
the purchase of the said stock, and shall further find that the
defendant refused to receive the said stock and refused to pay
the plaintiff for the same and shall further find that the plain-
tiff is and at the time of the events above mentioned was en-
gaged in the business of a stock broker and shall further find
that after the refusal of the defendant to receive and pay for
the said stock, if the jury find such, the plaintiff sold the said
stock without any notice to the public of said sale, then

under the pleadings the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Twenty-third Prayer*—The defendant prays the Court to instruct the jury that if they find that the defendant offered to buy from the plaintiff fifty shares of the capital stock of the Burroughs Adding Machine Company at and for the price of four hundred dollars a share and shall further find that the plaintiff did purchase said stock, and shall further find that the plaintiff notified the defendant of the purchase of the said stock, and shall further find that the defendant refused to receive the said stock and refused to pay the plaintiff for the same and shall further find that the plaintiff is and at the time of the events above mentioned the plaintiff was engaged in the business of a stock broker and shall further find that after the refusal of the defendant to receive and pay for the said stock, if the jury find such, the plaintiff sold the said stock without any notice to the public of the time of said sale, then the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Twenty-fourth Prayer*—The defendant prays the Court to instruct the jury that if they find that the defendant offered to buy from the plaintiff fifty shares of the capital stock of the Burroughs Adding Machine Company at and for the price of four hundred dollars a share and shall further find that the plaintiff did purchase said stock and shall further find that the plaintiff notified the defendant of the purchase of the said stock and shall further find that the defendant refused to receive the said stock and refused to pay the plaintiff for the same and shall further find that the plaintiff is and at the time of the events above mentioned was engaged in the business of a stock broker and shall further find that after the refusal of the defendant to receive and pay for the said stock, if the jury find such, the plaintiff sold the said stock without any notice to the public of the time of said sale, then under the pleadings the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Twenty-fifth Prayer*—The defendant prays the Court to instruct the jury that if they find that the defendant offered to buy from the plaintiff fifty shares of capital stock of the Burroughs Adding Machine Company at and for the price of four hundred dollars a share and shall further find that the plaintiff did purchase said stock and shall further find that the plaintiff informed the defendant of the purchase of said stock and shall further find that the defendant refused to receive the said stock and refused to pay the plaintiff for the same, and shall further find that the plaintiff is and at the time of the events above mentioned was engaged in the business of a stock broker and shall further find that after the refusal of the defendant to receive and to pay for the said stock, if the jury find such, the plaintiff sold the said stock at a price which was not the best price obtainable for the same by the use of ordinary care and diligence on the part of the plaintiff, then the verdict of the jury must be for the defendant. *(Granted.)*

*Defendant's Twenty-sixth Prayer*—The defendant prays the Court to instruct the jury that even though they may find that the plaintiff bought the stock mentioned in the evidence and even though they may further find that the defendant refused to receive and pay for the same, still the plaintiff is not entitled to recover if the jury find that the plaintiff did not use ordinary and reasonable diligence to obtain the best price for the said stock which he could get in the open market and if the jury so find then the verdict must be for the defendant. *(Refused as sufficiently covered by the 25th Prayer of Defendant's which has been granted.)*

*Defendant's Twenty-seventh Prayer*—The defendant prays the Court to instruct the jury that if they find from all the evidence in this cause that the sale made by the plaintiff to Mrs. Dutton was not made in good faith and at the best price which the plaintiff could have obtained by the use of ordinary care, skill and diligence on its part, then the verdict of the jury must be for the defendant. *(Granted.)*

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*C. Howard Millikin* and *Arthur L. Jackson* for the appellant.

*Thomas F. Cadwalader* (with whom was *Horace S. Whitman* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The facts, and legal principles involved in this litigation were so fully and clearly set out in the opinion prepared by CHIEF JUDGE BOYD, when this case was first before this Court (121 Md. 422), that a restatement of them would serve no useful purpose. It will be sufficient to note any variation in the evidence adduced in the present record, from that which appeared in the first appeal, and certain rulings of the Court as to evidence and upon prayers, which were not previously presented.

This record contains nineteen bills of exception, but at the argument the 1st, 5th, 6th, 7th, 16th, 17th and 19th were expressly waived or practically abandoned, and, therefore, may be excluded from consideration.

Upon the remand of the case from this Court, the eleventh count of the declaration was amended in conformity with the opinion of this Court, and the pleadings having been fully made up, the case proceeded to trial and resulted in a judgment in favor of the plaintiff for the sum of $5,618.25, being the difference between the price at which the stock had been sold to the defendant, Woodward, and the amount realized at the resale of it, after his refusal to complete the purchase, together with interest on such sum. The vital question is now, as it was on the first trial, whether in making the resale

Tyng & Co. acted in good faith, and the sale was fairly made for the best price obtainable.

From the evidence in the former case it appeared that the stock of the Burroughs Adding Machine Company was what was known as an unlisted stock, and that the sale was made after the sending out by Tyng & Co. of a circular letter addressed to a number of brokers and others supposed to be interested in the purchase of the stock of the company, offering the fifty shares for sale. The objection made was to the manner of making the sale, in that it had not been made either upon a stock-board or by auction, and it was held that a public sale in the sense of an auction sale, was not necessary, that it was only requisite to show that the property was sold for a fair price; that to have offered the stock at public auction under the circumstances might have resulted in a greater sacrifice than was made, and that not being a listed stock, and hence not being sold on the exchange, the proper mode was that the stock should be sold as such stocks are customarily sold and that the jury should have passed upon the facts under proper instruction from the Court.

JUDGE BOYD was careful in that opinion to say that "This Court has not however, decided that such a sale as we are now concerned with cannot be made at private sale." The evidence which is now presented to us differs markedly in one respect from that presented at the first trial. It is now shown that there was a stock exchange in the City of Detroit where the home office of the Burroughs Adding Machine Company was located; that the stock of that company was listed upon the exchange in Detroit, but that sales of it at such exchange were infrequent, and that none at all took place between the 25th August and the 10th October, 1911. The evidence of Mr. Andrews to the effect that the stock was customarily bought and sold by mail, telegram or long distance telephone with individual holders or brokers representing individual holders remains the same. The measure of the duty of Tyng & Co. is aptly expressed in *Brownlee* v.

*Bolton,* 44 Mich. 218, where it is said that "A vendor's right of resale must be exercised in good faith and at such time, by such methods and under such circumstances as are most likely to produce the fair value of the property and he (the vendor) has the burden of showing it was so exercised." See also, *Pratt* v. *Freeman,* 115 Wisc. 648.

Prior to the making of the sale Tyng & Co. had apprised Woodward of their purpose to resell the stock, but they were not under any necessity of notifying him as to the time and place of sale, the notice of the intention being sufficient. *Mendel* v. *Miller,* 126 Ga. 834; 7 L. R. A. (N. S.) 1184.

There is no testimony whatever given to contradict the testimony of Mr. Andrews to the effect that the customary method in buying and selling this stock was that pursued on this resale, and this brings the case directly in line with the rule laid down in *Regester* v. *Regester,* 104 Md. 1, that "whether an unpaid seller has exercised reasonable diligence in the conduct of a resale upon default of the buyer is a question of law for the Court on facts to be found by the jury."

The essential facts to call for the submission of the case to the jury had thus been established. It was impossible for the trial Court to say as matter of law that due diligence had not been exercised by the plaintiff in the sale of this stock, assuming of course that no proper evidence had been excluded or improper evidence admitted.

This involves as the next step a consideration of the rulings of the trial Court upon the questions of evidence.

The second bill of exceptions was to permitting the plaintiff to prove by Mr. Andrews the fact and extent of the fluctuations in the market value of the stock, and the appellant claims that such evidence was improper because of the fact that the stock in question was listed on the Detroit Exchange. At a subsequent stage of the case Mr. Hamlin, the secretary of the Detroit Exchange was examined, and it appears from his testimony that while so listed, the sales of it were infrequent, and even if the records of the transactions upon that

exchange had been offered, in view of the usual manner pur-
sued in dealing with the stock those records were not likely
to afford accurate evidence of the market prices and that the
variations thereof were well within the knowledge of brokers
who like Tyng & Co. made a specialty of dealing in stocks of
this class, and particularly this stock. No error is therefore
perceived in the ruling of the Court upon this exception.

The third and fourth exceptions are practically the same.
The one being taken to a question and the other to the refusal
of a motion to strike out the answer given to that question.
The question was directed to the custom with regard to noti-
fying vendees of the firm of Tyng & Co. of purchases made
for their account. Its materiality in the present case depends
solely upon whether the appellant had notified Tyng & Co.
prior to the sending of the notice of a cancellation of the
order for purchase. This Woodward claims to have done over
the long-distance telephone, and with equal positiveness such
cancellation is denied by Mr. Andrews; whether the cancella-
tion was in fact made or not was an important question to be
determined by the jury. The custom of Tyng & Co., or of
brokers in general in Chicago was of minor importance.
The offer was to prove, not what was done in this particular
case, but the general practice which might or might not have
been followed in this instance, and even assuming that the
Court fell into error in this ruling, it is impossible to see
how the appellant was in any way prejudiced thereby.

The eighth and ninth exceptions also relate to but a single
point. The appellant was under examination upon call of
the appellee, and was asked whether there had ever been a
quotation of $400—for the stock since the end of 1911; to
which he replied that he thought he had read in the news-
papers a quotation as high as 419; asked to name the news-
paper, in which such quotation had been given, he replied
that he had a paper that could answer that question; which
paper on request he produced and handed to the counsel for
Tyng & Co. Upon cross-examination his own counsel en-

deavored to introduce the paper which had been so called for but not offered by the plaintiff, and upon objection the paper was excluded. The paper in question was a letter addressed to the appellee under date of October 2nd, 1912, by a Mr. Wenger, purporting to give certain offerings, or of bids for the Burroughs stock of September 6th, and September 12th and 14th, 1911. Now, when or where Mr. Wenger obtained the figures contained in his letter does not appear; nor does the letter purport to contain a record of an actual sale of a single share of the stock; in addition to which the question in response to which the paper first appeared, was as to quotations since the end of the year 1911, while all of the figures contained in the letter were figures of bids or offerings made during the month of September, 1911, so that the paper even if otherwise unobjectionable was not germane to the question propounded. The action of the trial Court, therefore, in excluding it from the consideration of the jury, was entirely correct.

The tenth exception was to the offer in evidence of a letter purporting to be written on September 6th, 1911, by George M. West, a dealer in securities, to Mr. Wenger, inquiring if the latter had stock of the Burroughs Company for sale; and purporting to give a bid of $385 and an offer of $400. The letter itself does not make a direct bid for the stock at a firm price, nor does it purport to record any sale, and no valid objection can be predicated upon the exclusion of this letter.

The eleventh exception was similar in all respects and was with regard to the tender of a letter purporting to have been written by John C. Young.

The twelfth and thirteenth exceptions likewise have to deal with but a single matter. Frederick E. Woodward, the defendant in the suit, had been called by the plaintiff for the purpose of proving certain facts. Evidence had been given on the part of the plaintiff of a long distance telephone conversation between Andrews on behalf of the plaintiff, and the defendant, and the counsel for Woodward, on cross-examina-

tion sought to elicit from him that in such conversation over
the telephone the defendant had countermanded his order of
purchase, that is, it was an endeavor to prove the defendant's
case as a part of the evidence of the plaintiff out of the
defendant's own mouth. It is to be borne in mind, first, that
the defendant, when called by the plaintiff, had not been
examined by him upon the full details of that conversation,—
that the plaintiff, in calling the defendant, had upon the
stand an adverse witness, and not merely adverse, but. the
party whom the plaintiff was seeking to make liable for its
demand. Under such conditions the rule restricting the cross-
examination to subjects brought out by examination in chief
is more rigidly enforced than under any other conditions.
*Griffith* v. *Diffenderfer,* 50 Md. 466; *Lewis* v. *Clark,* 86
Md. 327. The plaintiff was entitled to present its view of
the case to the jury unprejudiced by the claims of the defend-
ant in order that after hearing the complete evidence, the
jury might be in a position to pass fairly upon the facts. The
lower Court was, therefore, entirely right in sustaining the
objection.

The fourteenth and fifteenth exceptions relate to the exclu-
sion of a deposition taken in the City of Chicago, of a certain
Joseph E. Harvey, and it is most earnestly contended in
behalf of the appellant that the objection to this evidence
came too late, not having been taken until a jury had been
sworn. For this reliance is had on the case of *Cumberland
Glass Co.* v. *DeWitt,* 120 Md. 381, and upon the language
used by JUDGE BURKE in that case, with regard to the ad-
missibility of the deposition of a witness Frist, when he said
he "filed no exceptions until after the jury was sworn and
the plaintiff had been examined and therefore under the rule
quoted exceptions to the execution and return of the commis-
sion were waived;" the objection in that case was not to the
substance of the evidence taken under the deposition, but to
the execution and return of the Commission; while in the
present case no exception is taken as to either the execution

or return, but to the substance of the deposition itself. The language of JUDGE BURKE already quoted cannot therefore be regarded as authority for the proposition that where testimony taken by way of deposition is objected to upon grounds other than those which have to do with the execution and return of the Commission, an objection to be available must be made before the swearing of the jury.

The purpose of Harvey's deposition attempted to be introduced was to show that an attempt had been made to obtain the presence of Mrs. Dutton, the supposed vendee at the resale of the stock, at the taking of depositions in Chicago; the deposition tending to show that there was no power lodged in the notary by whom the deposition was taken to summon or compel the attendance of witnesses, a statute having that end in view having been held unconstitutional in *Puterbaugh* v. *Smith*, 131 Ill. 199; and *McIntyre* v. *The People*, 227 Ill. 26. But the evidence given by Harvey did not show even an attempt to summon Mrs. Dutton, or give her notice of the hearing before the notary. He went to her house on two or three separate occasions but failed to find her, and when he did send a message through the maid, it was not that her presence was desired for the purpose of giving testimony at a certain time and place, but that he had some money for her. The case is therefore entirely different from that of *Weatherford Co.* v. *Duncan*. 88 Texas, 611, where it was held not to be error to allow the plaintiff to prove that he had had witnesses subpœnaed, and that the witnesses were in the employ of the defendant that there had been a regular summons issued for the witnesses desired; while in the case at bar not only was Mrs. Dutton not subpœnaed, but so far as the evidence of Harvey discloses she was not even notified that depositions were to be taken or that her presence was desired upon the occasion of the taking; and the fact that Mr. Harvey endeavored to do an act which he had no legal right to do, and to do it by the sending of a misleading message can form no basis for the admission of his evidence. Mrs. Dut-

ton who was the aunt of Andrews, an officer connected with
Tyng & .Co., may well have been an important witness for
the plaintiff itself to have placed upon the stand, their failure
to do so would have been a legitimate matter for comment
before the jury, but that also is an entirely different proposi-
tion from the admissibility of the deposition of Harvey.
This Court concurs with the lower Court in its rulings as set
forth in these two bills of exception.

At the conclusion of the evidence, the plaintiff offered five
prayers and the defendant twenty-seven, and in addition the
plaintiff offered a motion to strike out certain evidence.   The
Court granted the plaintiff's third and fourth prayers and
refused the first, second and fifth, and denied the motion.  To
the refusal of the three prayers of the plaintiff no objection
seems to be made.

The defendant's first and second prayers sought to with-
draw the case from the consideration of the jury, but as al-
ready indicated there were facts proper to be submitted to the
jury, and these two prayers were properly refused.  By the
granting of the defendant's 3d, 4th, 5th, 6th, 7th, 8th, 9th,
10th, 11th and 12th prayers there were withdrawn from the
consideration of the jury the first ten counts of the declara-
tion, and these prayers being granted, the defendant's 13th,
14th, 15th and 16th prayers were rendered unnecessary.

The defendant's 17th and 18th prayers were alternative
forms of stating defendant's contention, and the 17th prayer
having been granted, the 18th was properly refused.

The 19th, 20th, 21st, 22nd, 23d and 24th prayers of the
defendant all dealt with the manner of the sale of the stock,
and all involved the question of the sufficiency of notice, and
as drawn were properly refused.

The 25th and 26th prayers were alternative prayers upon
the subject of the diligence exercised on the part of the plain-
tiff in the resale of the stock, and the rule having been cor-
rectly stated in the defendant's 25th prayer which was
granted, it became unnecessary to grant the 26th.

Opinion of the Court.

The 27th prayer of the defendant related to the question of fraud in the resale of the stock to Mrs. Dutton, and therefore placed the issue fairly before the jury to find that the resale was a proper sale, made in good faith in the exercise upon the part of the plaintiff of ordinary care, skill and diligence.

Objection has been made by the defendant to the granting of the third and fourth prayers of the plaintiff, because of the fact that these prayers did not embody the contention of the defendant as to the cancellation of the contract by use of the long-distance telephone; but that aspect of the case was fully covered by the 17th prayer of the defendant. Both parties were entitled to have their respective theories of the case presented to the jury by the instructions of the Court; had the defendant offered no prayers there would be force in the contention of the defendant that the granting of the third and fourth prayers of the plaintiff was a segregation of their case to the prejudice of the defendant; but in as much as the defendant had offered a prayer upon this very subject, the criticism now made of the plaintiff's prayer is unsound, because if such modification had been incorporated in either or both of these prayers the inevitable tendency of the granting of the defendant's seventeenth prayer would have been to obscure the issue and confuse the minds of the jury upon that which was one of the crucial points in the case.

Finding no reversible error in any of the several bills of exception contained in the record, the judgment of the Baltimore City Court appealed from will be affirmed.

*Judgment affirmed, with costs to the appellant.*