## FREDERICK v. AMERICAN SUGAR REFINING CO.

(Circuit Court of Appeals, Fourth Circuit.   May 2, 1922.)

No. 1920.

Sales ⬀339—On refusal of purchaser to accept delivery made seller may retake
and sell property for purchaser's account.

Under a contract for sale of sugar, delivery to be made to carrier,
where plaintiff made due delivery and the sugar was transported to the
proper terminal warehouse in defendant's city, where it was held subject
to defendant's order, but he refused to accept it, plaintiff *held* to have
the right at its election to retake and sell the sugar, on due notice to de-
fendant, at any time thereafter, and after crediting defendant with the
proceeds to recover from him the remainder of the contract price.

In Error to the District Court of the United States for the District
of Maryland, at Baltimore.; John C. Rose, Judge.

Action at law by the American Sugar Refining Company against Wil-
liam C. Frederick.  Trial to court.  Judgment for plaintiff, and de-
fendant brings error.  Affirmed.

Isaac L. Straus, of Baltimore, Md. (W. W. Parker, of Baltimore,
Md., on the brief), for plaintiff in error.

James Piper and Joseph C. France, both of Baltimore, Md. (Piper,
Carey '& Hall, of Baltimore, Md., on the brief), for defendant in error.

Before KNAPP and WADDILL, Circuit Judges, and WEBB, Dis-
trict Judge.

WADDILL, Circuit Judge.  On the 28th day of May, 1920, the
plaintiff in error, hereinafter called the defendant, purchased from the
defendant in error, hereinafter called the plaintiff, 300 barrels of
sugar, covered by two separate orders of 150 barrels, each barrel to
contain 350 pounds more or less refined granulated sugar, at $22.50
per 100 pounds, f. o. b. New York, the first order of 150 barrels to be
delivered in the month of July, 1920, or as soon thereafter as possible,
and the second order of 150 barrels, in the month of August, 1920, or
as soon thereafter as possible.  The defendant obligated himself to ac-
cept delivery when made by the plaintiff, and that such delivery should
be complete on receipt of the goods by the carrier.  Pursuant to the
undertakings, the plaintiff, on the 21st of July, 1920, delivered the July
order of 150 barrels to the Pennsylvania Railroad Company in New
York, f. o. b., addressed to the defendant, c/o Terminal Warehouse
Company, Monument street, Baltimore, Md., and bills of lading were
issued therefor, and forwarded to the defendant.  On or about the 9th
of August, 1920, the plaintiff delivered to the defendant the August or-
der of 150 barrels, forwarding the same by water to the defendant, c/o
Terminal Warehouse Company, Monument street, Baltimore, Md.,
for which bills of lading were duly issued, and forwarded to the de-
fendant.  Defendant refused and declined to accept the shipments of
sugar upon arrival, giving as his excuse for so doing, in certain letters
under the dates of August 20 and 25, 1920, respectively, that the plain-

⬀For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tiff had unduly delayed delivery of the same, and stated that he was compelled to go into the open market and purchase sugar for his business, in consequence of such delay.

Correspondence was had between the parties, all resulting in the defendant positively refusing to accept the sugar, and in plaintiff notifying the defendant on the 23d day of November, 1920, that unless the sugar was taken and paid for, it would be resold on his account, and at his risk and cost. On the 2d of December, 1920, a further notice was given to the defendant of the intended sale of the sugar, and no attention being paid thereto, sale was had on the 21st and 22d of December, 1920, of 270 barrels, at 8 cents per pound, and later on, in January, 1921, the remaining 30 barrels were sold at 7 cents per pound, after which plaintiff rendered to the defendant an account of such resale, showing that the same brought $8,358.57, leaving a balance due the plaintiff of $15,839.30, for which demand was made and payment refused, and this suit was instituted. A jury was waived by the parties, by counsel, in writing, and the case submitted to the judge of the district court for trial. Evidence was fully heard, and each side submitted proposed prayers covering their respective views of the law, all of which were rejected by the court, and judgment entered upon the pleadings and proofs in favor of the plaintiff for the balance of $15,-839.30, from which action of the court, and in refusing to grant the prayers asked for, and the entry of judgment in favor of the plaintiff, this writ of error was sued out.

Sundry assignments of error were made, which need not be considered in detail as they present but two questions: (1) Whether or not the court erred in declining to accept the views of the law contained in the defendant's prayers; and (2) whether the testimony warranted the findings and judgment of the court.

The law of the case must be determined in the light of the facts, and especially the findings of the court, assuming there is testimony to support such finding. It is true the District Court rendered no specific decision regarding the law, nor made a specific finding of facts; but the court, by its judgment, adopted plaintiff's view of the facts, and accepted the law as applicable to that state of facts. The effect of the court's finding was that the defendant purchased the sugar, and declined and refused to accept the same in accordance with the terms of the contract, and, on the contrary, abandoned the sugar in the storage warehouse, and that it had to be sold to avoid total loss. It is true the defendant claimed that there was such delay in the shipment of the sugar as to disentitle plaintiff to recover, and also that the contracts were so vague and uncertain, that they could not be enforced. It is likewise true that, at and about the time the purchase was made, the price of sugar was abnormally high, and that the price continued rapidly to fall for several months thereafter.

The District Court doubtless took all these details into account in reaching its conclusion; that is to say, the price of sugar at the time of making the contracts, the drop in price at the times of delivery, and the continued fall in price up to and including the dates of sales of the abandoned sugar. Upon the whole case, the court's judgment was in

favor of the plaintiff, and we think the testimony supported the court's findings of fact on each of these matters, and after most careful consideration we reach the same conclusion as that of the District Court.

The defendant's alleged reason for failing to comply with his contracts was that deliveries of the sugar were unduly delayed. This excuse was made in August, and also as late as the 29th of November, 1920, after notice of sale had been given. Manifestly there is nothing in this contention. The first delivery was to be made during the month of July, or as soon thereafter as possible, and the second during the month of August, or as soon thereafter as possible. Delivery in the first instance was made on the 21st of July, the month specified in the contract, and the August delivery was made on the 9th of August, 1920, during the month specified. Hence there is no merit whatever in the claim.

The defense of indefiniteness, sought to be introduced, is almost as barren of merit, aside from the fact that it was apparently an afterthought that it was made, and for that reason does not commend itself to the court. The amounts of the two purchases were specified; the terms of payment were specified; the character of the sugar was specified; the times of deliveries were specified; the manner of delivery was specified. With all these requirements the plaintiff complied, leaving nothing for the defendant to do save to comply with his undertakings under the contracts to pay for the sugar. It is true that during the entire transaction, commencing in December, 1919, down to and about the time of making the contracts herein on the 28th of May, 1920, there was a highly fluctuating sugar market, prices ranging from 7.28 cents, on the 2d of December, 1919, down to the last week in May, 1920, when the peak was apparently reached at 23.57 cents per pound, and refined sugar granulated basis reached 26 cents. The contracts in question were entered into on the 28th of May, 1920, for future delivery, at 22½ cents per pound, less 2 per cent. if paid for in seven days, or 22.05 cents net f. o. b. New York. At the date of making the contracts, it was difficult to procure sugar at all. These conditions continued virtually through the first half of the year 1920, and there were practically no open market quotations by refiners from January 1 to August 11, 1920, when conditions began to change. During the latter part of July, and the early part of August, foreign sugar began to arrive, and the local price commenced to decline. Sales on August 12, 1920, f. o. b. New York, were at 16,758 cents per pound, and a rapid and uninterrupted decline was shown during the balance of the year, the quotation for December 31st being 7.42 cents and sales of sugar were practically suspended.

The sale of the sugar contracted for was made upon due notice to the defendant, and for the amount received from the sales due credit was given. There is no suggestion that the plaintiff did anything to depress the market, nor is there the slightest intimation of any interference or improper conduct on its part, in connection with the same. It was made in due course of business, with full opportunity to the defendant to protect himself, if he desired to do so, by purchasing the sugar, or making it sell for a higher price, if it did not bring its full

value, and the loss arising from the fluctuations of the market between the times of delivery and sale must fall upon the party failing to keep his contract, and not upon the one who, in all respects, complied with the same. There is no intimation that the conditions connected with the fluctuation of prices, arose from causes over which the plaintiff had any control.

This brings us to the consideration of the legal questions presented by the instructions offered by the defendant, which the court refused to give, especially as to what was the true measure of damages, as shown by the sixth prayer offered. The defendant's first, second, third, fourth, and fifth prayers all relate to the sufficiency of the evidence on the pleadings to entitle the plaintiff to recover, which have been disposed of by what has been already said. The sixth prayer asked the court to say as matter of law that—

"In the event that the court, sitting as a jury, finds for the plaintiff, the measure of damages under each of the respective contracts referred to in the evidence is the difference between the contract price and the market price at the city of Baltimore, at the time the defendant notified the plaintiff of his refusal to accept the respective shipments of sugar under the respective contracts between the parties referred to in the evidence."

This request the court properly refused, as the law enunciated was not applicable to the facts of the case. Under this instruction, the defendant would have placed upon the plaintiff the responsibility of the defendant's failure to carry out his contracts, and he had no right, upon his open breach of the contracts, to ask the plaintiff to hazard the responsibility of a further decline in the market. This was a risk the defendant invited by failing to keep his contracts with the plaintiff. The plaintiff had in all respects complied with the contracts, by making the shipments of sugar according to their terms, and was entitled to be paid the amount due. The defendant saw fit to refuse to take what he had bought, and apparently abandoned the purchase, which gave the plaintiff the right to sue at once for the entire breach of the contracts, or to pursue the course that was pursued here, of endeavoring to realize what could be procured from the abandoned purchase, upon due notice to the purchaser, and sue for the residue in case of loss.

A distinction is sought to be made between cases where title has actually passed to the vendee, and where the same is reserved in the vendor. Assuming such distinction to exist, it has no application here, where the goods sold were delivered according to the terms of the contract, to the vendee, under the express provision that the vendee would accept delivery when made by the seller. The sugar was shipped f. o. b. New York, and delivered at the proper terminal warehouse of the carrier in the defendant's city. In such case, the goods having been abandoned, and remaining in the possession of the terminal company as bailee for the vendee, the vendor had the right, at its option, to exercise its remedy against the goods, if it saw proper, and sue for the balance, or sue for the entire purchase price due under the contracts. This right of election to subject the specific property to the lien of the vendor, might be of vital importance in case of an insolvent ven-

dee (Sands & Crump v. Taylor, 5 Johns. [N. Y.] 410, 4 Am. Dec. 374, a decision of Chancellor Kent), and by no means debars his right of recovery by exercising the same in the case of a solvent vendee. Of course, full notice and fair dealing is required on the part of the vendor in making and executing his election to secure what can be saved from the abandoned property, and the vendee has ample opportunity to protect himself upon receipt of notice. Authorities to sustain the views here stated are abundant and a few will be cited. Young v. Mertens, 27 Md. 114, 126; Regester v. Regester, 104 Md. 1, 64 Atl. 286; Rosenbaum v. Weeden, Johnson & Co., 18 Grat. (Va.) 785, 98 Am. Dec. 737; Urbansky v. Kutinsky, 86 Conn. 22, 84 Atl. 317.

The case of Rosenbaum v. Weeden, Johnson & Co., supra, in its essentials, is very much like the instant case, and will be found to contain a full and most interesting discussion of this entire subject. There Judge Moncure, President, speaking for the Supreme Court of Appeals of Virginia, said:

"If a vendee of goods refuse to accept them when tendered according to the contract of sale, the vendor may elect to rescind the contract and keep or dispose of the goods for his own use, or to let it remain in full force and hold the vendee liable for the price of the goods and all damages arising from his breach of the contract. If he elect to let the contract remain in full force, he may either bring his action for the price of the goods when it is due and payable, or he may sell the goods, apply the net proceeds of sale to the credit of the vendee on account of the money due by him, and bring an action against him to recover the balance. * * * The plaintiffs, as we have seen, had a right of election to sell these goods or not, and could elect to sell them at any time while they remained in their hands, and the default of the defendants continued. And this right was not at all affected by the fact that the goods, during all the time they remained in their hands, were falling in their market value. They still had a lien upon the goods which they could enforce or not, at their election. The defendants' plain remedy, as before mentioned, was to comply with the terms of sale, and take away the goods. There could be no room, then, for saying that the plaintiffs delayed the resale for an unreasonable time upon a falling market, since they might elect to sell at any time and in any state of the market."

See, also, Elliott on Sales, 548, 551, 557, 593, 597; Benjamin on Sales (7th Ed.) §§ 767, 782; Uniform Sales Act Md. (Laws 1910, c. 346) §§ 72, 74, 81, 82, and 84.

Just a word should be said, perhaps, as to the time in which the resale was made. While there was considerable time between August and December, 1920, when the first sale was had, it will be found upon careful examination of the facts that it would have been impracticable to have made sale of the abandoned sugar between August and November, on account of the fluctuating market, and, indeed, lack of a market at all, and in the interim the defendant was kept advised of his continuing default, and given full and ample opportunity to protect himself at the sales as soon as it was practicable to make the same, which took place in December and January, and as early as the court believes, from the whole testimony, it was judicious to make the same. Certainly nothing occurred in connection with the resale to relieve the defaulting vendee from responsibility, and placing the same upon the vendor.

Regester v. Regester, supra, 104 Md. 1, 12, 64 Atl. 286; Woodward v. Tyng, 123 Md. 98, 91 Atl. 166.

The decision of the lower court will in all respects be affirmed.

Affirmed.